UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HARCH HYPERBARICS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-7467** |
| **AUGUST MARTINUCCI, ET AL.** | **SECTION "L" (3)** |

## ORDER & REASONS

Currently pending before this Court are Motions to Dismiss filed by Defendants Dr. August Martinucci, Dr. Ronald Holt and Paul Martinucci (Rec. Doc. Nos. 9, 11 & 13). For the following reasons, the motions are hereby DENIED.

**I. Background**

Plaintiff, Harch Hyperbarics, filed suit on November 25, 2009 seeking to pierce the corporate veil of Mid-West Hyperbaric, Inc. ("Mid-West, Inc."), Mid-West Hyperbaric Institute, P.C. ("Mid-West, P.C.") and the Mason Group, Inc. ("Mason"), so as to hold Defendants, Dr. August Martinucci, Dr. Ronald Holt, and Paul Martinucci, personally liable for arbitration awards assessed against the above corporations. Defendants have filed nearly identical motions to dismiss, challenging this Court's personal jurisdiction over them under Fed. R. Civ. Proc.12(b)(2), the propriety of venue under Rule 12(b)(3), and the sufficiency of Plaintiff's Complaint under Rule 12(b)(6).

This action arises out of a Licensing, Consulting, and Confidentiality Agreement ("licensing agreement") entered into between Plaintiff and Mid-West, Inc. for the use of certain know-how trade secrets developed by Dr. Paul Harch related to the medical use of hyperbaric oxygen. The licensing agreement was for a territory located in Illinois and Wisconsin. In

1

exchange for the nonexclusive, nontransferable right to use the Harch trade name and trade secrets, Mid-West, Inc. agreed to pay Plaintiff an annual licensing fee as well as royalties. The licensing agreement included a choice-of-law provision and an arbitration clause both of which required Louisiana law and jurisdiction be applied if a dispute arose.

At the same time the licensing agreement was formed, Dr. Harch and Dr. Martinucci entered into an agreement (contingent upon signing the licensing agreement) in which Dr. Harch guaranteed Dr. Martinucci an exclusive distributorship of P-Gel, a platelet derived growth factor gel that Dr. Harch had developed. The exclusive distributorship was for the Chicago region, which included an area located between Illinois and Wisconsin.

Prior to entering into the licensing agreement, Dr. Martinucci and Paul Martinucci traveled to Louisiana approximately twice, as representatives of Mid-West, Inc., to interview Dr. Harch and tour his clinic in New Orleans, Louisiana. Dr. Martinucci traveled to Louisiana a third time to discuss the distribution of P-gel in the Chicago region. Dr. Harch communicated with Dr. Martinucci and Paul Martinucci via telephone and email from their respective states on several occasions.

Three months after the execution of the licensing agreement, Defendants Dr. Martinucci, Dr. Holt, and Paul Martinucci, all corporate directors and shareholders of the Mid-West, Inc., changed the corporation's name to "The Mason Group, Inc" ("Mason"). Additionally, Drs. Martinucci and Holt formed a new entity named "Mid-West Hyperbaric Institute, P.C." The name change and formation of the new entity were material breaches of the licensing agreement. In June of 2004, Mid-West P.C. opened a clinic under the name: "Mid-West Hyperbaric Institute P.C. in Association with Harch Hyperbarics, Inc." Plaintiff alleges that Defendants diverted

2

income from the clinic away from Mason f/k/a Mid-West, Inc. to Mid-West P.C., paying themselves salaries and consulting fees while representing to Plaintiff that the clinic was not profitable. Further Plaintiff alleges Defendants, through Mason f/k/a Mid-West, Inc., failed to pay the agreed licensing fees.

In July 2008, Plaintiff filed an action for arbitration pursuant to the terms of the licensing agreement. The arbitration, as a provision of the licensing agreement, was held in Louisiana. Drs. Holt and Martinucci were present for the arbitration in Louisiana on behalf of Mid-West, Inc. f/k/a Mason. On November 3, 2009, the arbitrator entered an award in favor of Plaintiff, finding the Mid-West, Inc. f/k/a Mason breached the licensing agreement. Damages were assessed in the amount of $2,379,525 against Mid-West, Inc., Mason, and Mid-West, P.C. The award remains unpaid.

## II. THE MOTIONS

On November 25, 2009 Plaintiff filed a one-count complaint of fraud in this Court against the Defendants, seeking to pierce the corporate veils of Mid-West, Inc. f/k/a Mason, and Mid-West Hyperbaric Institute, P.C., and to hold each Defendant individually liable for the arbitration award.

On March 1, 2010, Dr. Martinucci filed a motion to dismiss. On March 2, 2010, Dr. Holt and Paul Martinucci also filed motions to dismiss, which were nearly identical to Dr. Martinucci's motion. On April 5, 2010, Plaintiff filed a consolidated opposition to all three motions.

Defendants argue that Plaintiff's claim should be dismissed (1) because the Court does not have personal jurisdiction over any Defendant under Fed. R. Civ. P. 12(b)(2), (2) because

venue is improper under Fed. R. Civ. P. 12(b)(3) and (3) because Plaintiff failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) in so far as Plaintiff did not plead fraud with particularity as required by the Fed. R. Civ. P. 9(b). The Court will discuss these issues in turn.

**III. LAW & ANALYSIS**

    **A**. **Personal Jurisdiction**

Defendants argue this Court does not have personal jurisdiction over them. Plaintiff does not dispute that this Court has no general personal jurisdiction over Defendants but instead asserts that the Court has specific jurisdiction over the Defendants. Specifically, Plaintiff argues that all three Defendants are the alter egos of Mid-West, Inc./Mason Group and that Drs. Martinucci and Holt are the alter egos of Mid-West, P.C., and as such, they stand in the shoes of their corporations for the purposes of determining jurisdiction. Defendants respond that the fiduciary shield doctrine applies and this Court may not exercise jurisdiction over the Defendants as a result of the contacts they had in their roles as corporate representatives. The Court will first determine if personal jurisdiction exists over Defendants as individuals separate and apart from the corporations they represent, and will then evaluate personal jurisdiction under Plaintiff's alter ego argument.

In order for a federal district court sitting in diversity to exercise personal jurisdiction over defendants who do not reside within the forum state, the court must establish that the particular facts of the case fall within the forum state's long-arm statute and that the assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The Louisiana long-arm

statute provides that its courts may assert personal jurisdiction to the extent legally permitted under due process. *See* La. Rev. Stat. Ann. § 13:3201(B); *Nuovo Pignone, SPA v. Stroman Asia M/V, etc.*, 310 F.3d 374, 378 (5th Cir. 2002) (stating Louisiana long-arm statute and Due Process Clause inquiry "merge into one"); *Walk Haydel & Associates, Inc*. 517 F.3d 235, 242-243 (5th Cir. 2008). Due process requires that the defendants "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

A determination that the defendants purposefully established minimum contacts in the forum state remains the "constitutional touchstone" of whether a court's assertion of personal jurisdiction over the defendants complies with the Due Process Clause of the Fourteenth Amendment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). When a court makes the minimum contacts determination, it focuses on the defendants' actions. In order to establish minimum contacts, the defendants must commit "some act by which the defendant[s] purposefully avail [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

"Minimum contacts" may be established through acts giving rise to general or specific jurisdiction. Specific jurisdiction is applicable where the non-resident defendants' contacts with the forum state "arise from, or are directly related to, the cause of action," whereas general jurisdiction may be established when a defendant's contacts with the forum state are unrelated to

the cause of action but are "continuous and systematic." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). It is uncontested that general jurisdiction does not exist in the instant matter.

The plaintiff must establish a prima facie showing of jurisdiction if the defendant makes a challenge to a court's *in personam* jurisdiction. The allegations in the plaintiff's complaint are accepted as true, except as contradicted by affidavits presented by the defendant, and all such controverted allegations are resolved in the plaintiff's favor. *Shane Matherne Enters., Inc. v. Clifford Sokolic*, No. 04-2140, 2006 WL 622821, *11-12 (E.D. La. Mar. 6, 2006) (quoting *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).

### 1. Specific Jurisdiction over Defendants as Individuals

The Defendants as individuals have not established minimum contacts with the state of Louisiana. As individuals, Defendants have had, few, if any, personal contacts with Louisiana. All three Defendants are residents of the State of Illinois and have been at all times relevant to this litigation. None of the Defendants have ever lived or owned real estate in Louisiana, have ever voted in Louisiana or held a bank account in Louisiana. Defendants contacts with Louisiana are almost exclusively in their capacity as representatives of Mid-West, Inc. f/k/a Mason. The Court will address these contacts below.

### 2. Specific Jurisdiction over Defendants as Alter Egos of Midwest/Mason

Plaintiff contends that Defendants are subject to this Court's jurisdiction because Midwest, Inc. f/k/a Mason is the alter ego of its owners, Defendants Dr. Martinucci, Dr. Holt and Paul Martinucci and that Mid-West, P.C. is the alter ego of its owners, Drs. Martinucci and Holt. According to Plaintiff, this Court has personal jurisdiction over Mid-West, Inc. f/k/a Mason and

6

Mid-West, P.C. and this Court should pierce the corporate veil of the above entities and find that the defendant owners are subject to this Court's jurisdiction. First the Court must determine if Mid-West, Inc. f/k/a Mason and Mid-West, P.C. are subject to the jurisdiction of this Court. Then, the Court will address whether it is appropriate to pierce the corporate veil.

**a. Specific Jurisdiction over Midwest Inc./Mason and Mid-West P.C.**

Mid-West, Inc. f/k/a Mason and Mid-West, P.C. are Illinois corporations formed and domiciled in Illinois. None of the entities have ever had an office in Louisiana, ever been authorized to transact business in Louisiana or had a registered agent in Louisiana. There were some communications via telephone and email between the Plaintiff and the corporations, as well as travel to Louisiana by corporate representatives on two occasions, however the exchange of communication between a resident and non-resident regarding the formation of a contract is insufficient to confer jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). In addition, the performance of the contract was not to take place in Louisiana. The Fifth Circuit has made clear that engaging in activities related to the contract but which do not encompass performance of the contract are insufficient to constitute minimum contacts. *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.1992). The performance of the contract, the distribution of the P-gel and the alleged fraud occurred in the Chicago Region and the corporate formalities occurred mostly in Illinois. Further, because the performance of the contract was to take place in Illinois and there is no evidence that the corporations had other contacts with Louisiana to further their business, the corporations did not establish minimum contacts through the mere formation of the contract.

However, the licensing agreement between Mid-West, Inc. and Harch includes clear

7

choice of law and arbitration provisions pointing to Louisiana. It states in pertinent part:

> This agreement shall be construed in accordance with and governed by the laws of the State of Louisiana, without regard to principles of conflicts of laws. The parties agree to submit to the exclusive jurisdiction of the state courts of the State of Louisiana in Jefferson Parish, Louisiana or the federal courts in the Eastern District of Louisiana for resolution of any matter that is not subject to arbitration.
>
> ***
>
> Any dispute of controversy arising under, out of, or in connection with, or in relation to this Agreement, or any amendment thereof, or the breach hereof shall be determined and settled by arbitration in Jefferson Parish, Louisiana....and applying the laws of the State of Louisiana.

Plaintiff contends that the Court has personal jurisdiction over the Corporate Entities as result of the licensing agreement.

A choice of law and an arbitration provision pointing to Louisiana "bolsters a finding for specific jurisdiction." *Timber Source, LLC v. Cahaba Valley Timber Co,* No. 06-9239, 2007 WL 891883, at *4 (E.D. La. Mar.21, 2007). While a choice of law provision alone is not conclusive to confer jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985), the Fifth Circuit has found that "an agreement to arbitrate is one such legal arrangement by which a litigant may impliedly consent to personal jurisdiction" *PaineWebber, Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001). "By agreeing to arbitrate in a particular state, the litigant impliedly consents to the jurisdiction of the courts in that state because that state's courts have jurisdiction to compel arbitration in that state." *Encompass Power Services, Inc. V. Engineering & Const. Co., Inc.*, No. H-05-2759, 2005 WL 2138303, at *1, (S.D. Tex., Sept. 1, 2005) (citing *PaineWeber, Inc.*, 260 F.3d at 461). *See also Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 363 (2nd Cir. 1964). Courts have clearly found that an arbitration provision with a forum selection clause

may confer jurisdiction in the forum state's courts for the purposes of compelling arbitration.

Similarly here, it would seem an absurd result to find that corporate entities are not subject to jurisdiction in Louisiana for the purposes of enforcing an arbitration award that was rendered against them in the same state. Mid-West, Inc. f/k/a Mason agreed to a choice of law provision electing Louisiana law and an arbitration provision selecting Jefferson Parish, Louisiana as the location of arbitration and Mid-West, Inc. f/k/a Mason and Mid-West, P.C. actually submitted to arbitration in the state. In addition to the visits and contacts by corporate representatives stated above, the corporations attended an arbitration, and had a judgment rendered against them in Louisiana. Thus, personal jurisdiction is proper over Mid-West, Inc./Mason and Mid-West, P.C.

### b. Piercing the Corporate Veil

Finding jurisdiction over Mid-West, Inc./Mason and Mid-West, P.C., the Court now turns to whether the Defendants stand in the shoes of their corporations for jurisdictional purposes, or whether they are protected by the fiduciary shield doctrine.

Under the fiduciary-shield doctrine "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual even though the state has *in personam* jurisdiction over the corporation." *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985). However, "courts have recognized an exception to this rule when the corporation is the alter ego of the individual. In these cases courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes." *Stuart,* 772 F.2d at 1197, *see also Timber Source, LLC v. Cahaba Valley Timber Co,* No. 06-9239, 2007 WL 891883, at *5 (E.D. La. Mar.21, 2007); *Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640,

9

653 (5th Cir. 2002).

In this case, Plaintiff's claim that Defendants are alter-egos of Mid-West, Inc./Mason and Mid-West, P.C. goes not only to the jurisdictional question, but also to the merits of the case. Whether or not the corporate veil can be pierced reaches the issues of both jurisdiction and liability. In such an instance, the Fifth Circuit has indicated that a court should defer the resolution of the jurisdictional question until trial to allow resolution on the merits.

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdictional issue is intertwined with the merits and therefore can be determined based on jury fact findings. In this situation, it is often "preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.

*Walk Haydel & Associates, Inc. v. Coastal Power Production Co.,* 517 F.3d 235, 242 (5th Cir. 2008). *See also McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir.1967) ("where the factual and jurisdictional issues are completely intermeshed, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other."); *Atel Mar. investors, LP,* 2009 WL 5214898 at *1, n.13 ("While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits.")

Thus, whether the Defendants are the alter-egos of their corporations and may be forced to stand in the shoes of those corporations for both jurisdicitonal and liability purposes is a question appropriate for trial and not summary judgment. Defendants' Motions to Dismiss for

lack of personal jurisdiction are DENIED.

    B. Venue

Defendants argue venue is not proper. Plaintiff responds that venue is proper under 28 U.S.C. 1391(a)(2) because this suit involves a Louisiana corporation which suffered an economic harm in Louisiana at the hands of Defendants who practiced fraud or deceit. Further, Plaintiff argues that the arbitration which occurred in Louisiana is a "substantial part" of the events giving rise to the claim and thus establishes venue.

In a diversity action, venue is proper in (1) a judicial district where any defendant resides in the same State (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

Plaintiff has alleged tortious conduct, mainly fraud and deceit, by the Defendants. Specifically, Plaintiff, a Louisiana corporation, claims to have suffered economic harm in the state of Louisiana. Tortious injury in the state constitutes a substantial event giving rise to Plaintiff's claim for the purposes of 28 U.S.C. §1391(a)(2). *Blanchard & Co. v. Spectrum Numismatics, Inc.*, No. 93-2554, 1994 WL 606191, at *5 (E.D. La. Oct. 26, 1994). Further, the Court agrees with Plaintiff that the arbitration award entered in Louisiana is a "substantial part" of Plaintiff's claim and supports a finding that venue is proper. Defendants have not met their burden of showing venue is improper. Thus, Defendants Motions to Dismiss for improper venue are DENIED.

**C. Failure to State a Claim to Pierce the Corporate Veil pursuant to Rule 12(b)(6)**

Defendants argue that Plaintiff has not pled facts sufficient to sustain a claim to pierce the corporate veil.  Further, the Defendants argue that Plaintiff's allegations do not meet the standard of Fed. R. Civ. P. 9(b) requiring fraud to be pled with particularity.  Plaintiff responds that he has sufficiently pled his claim under Rule 8(a), in accordance with Illinois law.

**1. Standard of Review**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim," the complaint should not be dismissed for failure to state a claim.  *Id.* at 284-285 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)).  However, conclusory allegations or legal conclusions masquerading as factual conclusions will not defeat a motion to dismiss.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citing *Fernandez-Montes*, 987 F.2d at 284).

**2. Pleading Requirements**

Federal Rule of Civil Procedure 8(a)(2) requires a party's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint does not need to provide "detailed factual allegations" to avoid dismissal for failure to

state a claim, it must include more than mere "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

However, Rule 9(b) requires that when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Fifth Circuit requires that a pleading of fraud set out the time, place, and contents of false representation, including the identity of the person making the misrepresentation and the harm that occurred. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997). Rule 9(b)'s requirements may be relaxed in certain circumstances, such as when the facts relating to the fraud are "peculiarly within the perpetrator's knowledge." *U.S. ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003).

### 3. Plaintiff's Claim to Pierce the Corporate Veil

The sole cause of action that Plaintiff asserts is an alter ego claim, based on a corporation formed and operating in Illinois. According to Defendants Illinois law applies to the determination of whether the corporate veil should be pierced and Rule 9(b)'s heightened pleading requirement is applicable. While Plaintiff does not concede the applicability of Illinois law, Plaintiff argues that a veil piercing claim under Illinois law is only subject to the pleading requirements of Rule 8(a). The Court need not reach the question of whether Illinois law is applicable because assuming *arguendo* that Illinois law does apply the Court finds that Plaintiff has sufficiently pled the veil-piercing claim under Rule 8(a), the applicable pleading rule.

Most district courts applying Illinois law with regard to veil-piercing claims have held that the liberal pleading requirements of Rule 8 are applicable to such claims as opposed to the

more stringent standard of Rule 9(b). *See e.g. Flentye v. Kathrein,* 485 F. Supp.2d 903, 913 (N.D. Ill. 2007); *Wachovia Securities, LLC v. Neuhauser,* No. 04 C 3082, 2004 WL 2526390, *11 (N.D.Ill. Nov.05, 2004); *Kellers Sys., Inc. v. Transport Int'l Pool, Inc.,* 172 F.Supp.2d 992, 1000-01 (N.D.Ill.2001).[1] Thus, the Court next looks to whether the Plaintiff's complaint sets out facts to support the substantive claim.

Illinois courts apply a two-part test to determine whether to pierce the corporate veil. *See Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F. Supp. 2d 794, 797 (C.D. Ill. 1998); *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996). First, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Pirelli*, 4 F. Supp. 2d at 797; *Jacobson*, 664 N.E.2d at 331. When determining whether there is sufficient unity of interest and ownership to warrant piercing the corporate veil, the Court can look to the following factors: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stakeholders. *Jacobson*, 664 N.E.2d at 331. Secondly, a court must look to whether "[c]ircumstances...exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote

---

[1]While one district court has indicated that Rule 9(b) may be applied to veil piercing claims, that court made no comment on, and cited no further support for, using the heightened analysis. *Typographics Plus, Inc. v. I.M. Estrada & Co.,* No. 98-886, 2000 WL 1006572, *3-*5 (N.D. Ill. July 19, 2000). Further, that court found the complaint did not "satisfy the requirements of 9(b), even under the liberal notice pleading requirements of this court." *Id.* at *4. It is unclear from such a statement whether the court actually applied the heightened standard under Rule 9(b). Either way, this Court fails to find the case persuasive.

injustice, or promote inequitable consequences." *Pirelli*, 4 F. Supp. 2d at 797; *Jacobson*, 664 N.E.2d at 331.

Plaintiff has pled facts to allege both that there was a "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist[ed]" and that "[c]ircumstances...exist[ed] such that adherence to the fiction of a separate corporate existence...sanction[ed] a fraud, promote[d] injustice, or promote[d] inequitable consequences." *Pirelli*, 4 F. Supp. 2d at 797. Plaintiff alleges in his complaint that "Defendants practice[d] fraud and deceit in connection with the contractual relationship between the Mason Group, Inc...and Harch through their interposition of Midwest Hyperbarics Institute, P.C. and their siphoning of profits from the use of the License."[2] The complaint states Defendants diverted income away from Mid-West, Inc./Mason to Mid-West, P.C., paying themselves salaries and consulting fees while representing to Harch that the Clinic was not profitable,[3] and goes so far as to list the amount of consulting fees Defendants received as compared to the gross income of Mid-West, P.C. from 2004-2008.[4] Further, Plaintiff alleges that all three entities were run as one entity[5], that the entities were run under the direction of the named Defendants[6], that

---

[2]Complaint, ¶ 30.

[3]Complaint, ¶ 9.

[4]Complaint, ¶ 10,18, 19.

[5]Complaint, ¶ 21-25.

[6]Complaint, ¶ 15.

15

they were undercapitalized[7] and did not follow corporate formalities[8]. The Court finds Plaintiffs have more than satisfied they requirements of Rule 8. Defendants' Motions to Dismiss for failure to state a claim are hereby DENIED.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendants' Motions to Dismiss (Rec. Doc. Nos. 9, 11 & 13) are hereby DENIED.

New Orleans, Louisiana, this 20th day of August, 2010.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Complaint, ¶ 26.

[8] Complaint, ¶ 27.