UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HARCH HYPERBARICS, INC. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO.  09-7467 |
| | * | |
| AUGUST MARTINUCCI ET AL. | * | SECTION "L" (3) |
| | * | |

## ORDER & REASONS

Before the Court is a Motion to Stay (Rec. Doc. No. 66) filed by Defendants August

Martinucci, Paul Martinucci, and Ronald Holt. The Court has reviewed the submitted

memoranda and the applicable law. For the following reasons, the motion is denied.

## I. BACKGROUND

This case arises out of an arbitration clause in a licensing agreement between Plaintiff

Harch Hyperbarics, Inc. and Mid-West Hyperbaric Institute, Inc. ("Mid-West Inc."). Under the

licensing agreement, Harch authorized Mid-West, Inc. to use its trade name and trade secrets in

return for the payment of an annual licensing fee and royalties. Several months after the

licensing agreement was executed, however, Defendants August Martinucci, Paul Martinucci,

and Ronald Holt, who were corporate directors and shareholders of Mid-West, Inc., changed the

name of the corporation to the Mason Group, Inc. Defendants August Martinucci and Ronald

Holt also formed a new entity named Mid-West Hyperbaric Institute, P.C. ("Mid-West P.C.")

and directed this new entity to use the Harch trade name and trade secrets.

Alleging that these actions were in breach of the licensing agreement, Plaintiff invoked

the arbitration clause in the agreement, which provides that "[a]ny dispute or controversy arising

under, out of, or in connection with, or in relation to" the licensing agreement is to be determined by arbitration in Louisiana applying Louisiana law. In August 2009, an arbitration was convened in New Orleans, Louisiana. In November 2009, the arbitrator found in favor of Plaintiff and entered an interim award of about $2.4 million. In January 2010, a final award of about $2.8 million was entered.

In November 2009, Plaintiff filed suit in this Court. In its Complaint, Plaintiff averred that it will be unable to collect the arbitration award from the Mason Group or Mid-West P.C. It further alleged that the Mason Group is the alter ego of the three Defendants and that Mid-West P.C. is the alter ego of Defendants August Martinucci and Ronald Holt. Seeking to hold Defendants personally liable for the arbitration award, Plaintiff asked that the corporate veil of the Mason Group and Mid-West P.C. be pierced.

In March 2010, each Defendant filed a motion to dismiss. Defendants sought the dismissal of this case on several grounds, including the lack of personal jurisdiction. In August 2010, the Court denied the motions in all respects. *See Harch Hyperbarics v. Martinucci*, 2010 WL 3398884, at *8 (E.D. La. 2010). In particular, the Court explained that it could not conclusively determine the question of personal jurisdiction. Although the Court found that there were sufficient contacts between Louisiana and the Mason Group and Mid-West P.C., the additional question of whether those contacts could be imputed to Defendants was intertwined with the merits of Plaintiff's alter ego claims. The Court held, in light of well-settled law, that a conclusive determination of personal jurisdiction had to be deferred.

In September 2010, Defendants filed a motion to certify for interlocutory appeal the Court's order denying their motions to dismiss. In November 2010, the Court denied the motion.

2

*See Harch Hyperbarics v. Martinucci*, 2010 WL 4665923, at *6 (E.D. La. 2010). The Court explained that Defendants had not demonstrated that its order denying their motions to dismiss "involve[d] a controlling question of law as to which there is a substantial ground for difference and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## II. PRESENT MOTION

Defendants have now filed a Motion to Stay (Rec. Doc. No. 66). Defendants note that both the Mason Group and Mid-West P.C. have voluntarily filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the Northern District of Illinois. Defendants argue that as a result, Plaintiff's claims are subject to the automatic stay of 11 U.S.C. § 362(a)(3). According to Defendants, the reason is that a claim to pierce the corporate veil of a debtor belongs to the debtor itself and that as a result, such a claim constitutes "property of the estate" under the automatic stay provision. Defendants contend, in the alternative, that a discretionary stay is appropriate.

Plaintiff has filed an opposition to Defendants' motion, in which it has advanced two observations. First, Plaintiff asserts that the issue of the automatic stay is to be addressed by the bankruptcy court rather than by this Court. Second, Plaintiff draws attention to the fact that, as shown by their bankruptcy petitions, the Mason Group and Mid-West P.C. each have only one creditor – Plaintiff itself for the arbitration award of around $2.8 million. Plaintiff asserts that these petitions do not serve any purpose that underlies Chapter 7 of the Bankruptcy Code and that accordingly, a stay is not warranted.

## III. LAW AND ANALYSIS

3

As noted above, Defendants have argued for both an automatic stay and a discretionary stay of this case. The Court will discuss these in turn.

**A. Automatic Stay**

As a threshold matter, the Court must address Plaintiff's suggestion that the question of whether there is an automatic stay under 11 U.S.C. § 362(a)(3) is to be resolved by the bankruptcy court rather than by this Court. Although this idea may be supported by sound policy considerations, it does not reflect the law. The Fifth Circuit has stated that "[w]hether the [automatic] stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending . . . and the bankruptcy court." *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (quoting *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir.1985)). In light of this, it is clear that this Court has jurisdiction to rule on this question.

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a voluntary petition for bankruptcy "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). As the Fifth Circuit has explained, the automatic stay is "a key component of federal bankruptcy law." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987). "Bankruptcy is designed to provide an orderly liquidation procedures under which all creditors are treated equally." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983) (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297). The automatic stay is thus critical because it "prevents a multijurisdictional rush to judgment . . . and protects the interests of all creditors." *Id.*

4

In *S.I. Acquisition*, the Fifth Circuit considered the application of the automatic stay to a claim that had been asserted by a creditor against nonbankrupt defendants and that sought to pierce the corporate veil of the debtor, which had subsequently filed for bankruptcy. *See S.I. Acquisition*, 817 F.2d at 1151-52.  The Fifth Circuit began its analysis by noting that the key statutory term "property of the estate" is "broadly defined" to encompass "all legal or equitable interests of the debtor in property." *Id.* at 1149 (quoting 11 U.S.C. § 541(a)(1)). This phrase, the court noted, has long been held to include "rights of action as bestowed by either federal or state law." *Id.* (citing *MortgageAmerica*, 714 F.2d at 1274).

The critical question, therefore, was whether under the applicable federal or state law, a cause of action could be asserted by the debtor. *Id.* (noting that "the scope of the automatic stay under section 362 depends upon how [state] courts would characterize a cause of action" (quoting *MortgageAmerica*, 714 F.2d at 1276)). If so, the cause of action was "property of the estate" and subject to the automatic stay. *See id.* The court in *S.I. Acquisition* thus turned to the substantive law applicable in that case – Texas law – and asked whether under that body of law, a claim by a creditor to pierce the corporate veil of the debtor belonged to the debtor itself. *See id.* at 1151-52.

Based upon its review of Texas case law, the court determined that in Texas, "a corporation may pierce its own corporate veil." *Id.* at 1152. Accordingly, the Fifth Circuit concluded that the alter ego claim asserted by the creditor belonged to the debtor and was "property of the estate" within the meaning of the Bankruptcy Code. *Id.* at 1153. It followed that under Section 362(a)(3), the creditor's claim – even though it was being asserted against nonbankrupt defendants – was automatically stayed upon the filing of the bankruptcy petition by

the debtor. *Id.*

Under this analytical framework, it is clear that the crucial consideration is whether, under the applicable substantive law, a cause of action can be asserted by the debtor. *See id.* at 1149. If the applicable state law permits a corporation to pierce its own veil, then the claim belongs to the debtor. *See id.* at 1153; *see also Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) (applying Virginia law). In contrast, if the applicable state law does not allow a corporation to pierce its own veil, then the claim does not belong to the debtor. *See, e.g.*, *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 225-27 (6th Cir. 1996) (applying Michigan law); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225-26 (8th Cir. 1987) (applying Arkansas law).

This Court has previously reserved the question of what law is applicable to the alter ego claims that Plaintiff has asserted in this case. *See Harch Hyperbarics, Inc. v. Martinucci*, 2010 WL 3398884, at *7 (E.D. La. 2010). The Court must now resolve that issue. Under well-settled law, a federal court sitting in diversity is obligated to apply the conflict-of-law rules of the forum state. *See Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 786 (5th Cir. 1997). The Louisiana Civil Code provides, in relevant part, that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515.

In *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002), the Fifth Circuit observed that the Louisiana Supreme Court had yet to apply this provision to an alter ego claim. *Id.* at 646. The court thus made an *Erie* guess and held that under Louisiana law, "the law of the state of incorporation governs the determination [of whether] to pierce a corporate veil."

*Id.* at 647. Since then, neither the Louisiana Supreme Court nor any other court has rejected this conclusion. The Court will therefore adhere to it. In this case, the Mason Group and Mid-West P.C. are both incorporated in Illinois. Accordingly, Illinois law will be applied to determine whether a claim to pierce the corporate veil belongs to the debtor and is therefore "property of the estate." 11 U.S.C. § 362(a)(3).

In their motion, Defendants have relied heavily on the Seventh Circuit's analysis of Illinois law in *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987). In that case, the court acknowledged that "[s]tate law determines whether property is an asset of the debtor." *Id.* at 1344. After surveying Illinois law, the Seventh Circuit held that under that body of law, a debtor-corporation could bring a claim to pierce its own veil and that accordingly, such a claim is one that belongs to the debtor-corporation. *Id.* at 1345-46. Defendants contend that in light of *Koch*, the claims asserted by Plaintiff in this case are ones that belong to the bankruptcy estates and thus subject to the automatic stay.

Defendants' reliance on *Koch* is misplaced. The Supreme Court of Illinois subsequently rejected the Seventh Circuit's analysis in that case and held that under Illinois law, a corporation may not pierce its own veil. *See In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1017-20 (Ill. 1994). Needless to say, "the highest court of the state is the final arbiter of what is state law." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Given that, under Illinois law, Plaintiff's alter ego claims cannot be asserted by the debtor-corporations, they cannot be considered "property of the estate[s]" within the meaning of the Bankruptcy Code. 11 U.S.C. § 541(a)(1). Accordingly, they are not subject to the automatic stay on the ground urged by Defendants.

In *S.I. Acquisition*, the Fifth Circuit observed that the automatic stay applies not only to a claim that "belongs to the debtor," but also to one that "seeks to recover property of the estate." *S.I. Acquisition*, 817 F.2d at 1150. There, however, the court did not continue its discussion to address the scope of that second category, *see In re Schimmelpenninck*, 183 F.3d 347, 355 (5th Cir. 1999) (discussing the analytical path taken by *S.I. Acquisition*), and in this case, Defendants have also not argued that Plaintiff's claim is one that falls thereunder. The Court will nonetheless analyze that possibility. *See id.* at 351 (suggesting that a court is to consider the second category identified in *S.I. Acquisition*, even if the point is not specifically raised).

In *Schimmelpenninck*, the Fifth Circuit gave meaning to the second category identified in *S.I. Acquisition*. *See id.* at 358-61. The Court of Appeals looked back to the policy considerations that underlie the automatic stay provision, namely those of "securing and preserving the debtor's property and ensuring equal distribution of that property to similarly situated creditors." *Id.* at 359. The court observed that "[a]s not all claims 'belong to' the debtor – because either by statute or common law the debtor is precluded from asserting the action – another mechanism must exist to prevent individual creditors from annexing assets of the estate to gain an advantage." *Id.* at 360. Otherwise, the absence of a stay would work to the detriment of "the collective benefit of creditors." *Id.* at 359.

In light of that recognition, the Fifth Circuit held that the automatic stay provision reaches "[a]ctions by individual creditors" that cannot be asserted by the debtor, but that nonetheless allege "a generalized injury to the debtor's estate." *Id.* at 360. There, the court concluded that the alter ego claim of the creditor was one that alleged a generalized injury to the debtor's estate because "[t]he relief sought by [the creditor]," to pierce the corporate veil, "is

common to all of the creditors." *Id.* at 361. The court explained that if the two entities that were at issue are to be considered as one, then "the assets and liabilities of the entities should be amalgamated for the benefit of all creditors, not [the creditor] alone." *Id.* The Fifth Circuit accordingly held that the creditor had to be enjoined from prosecuting his alter ego claim. *Id.*

At first glance, the analysis in *Schimmelpenninck* seems to suggest that Plaintiff's claim is subject to the automatic stay on this alternative ground. Indeed, under ordinary circumstances, one would expect that a debtor-corporation that has filed for bankruptcy has numerous creditors. In that circumstance, if a trustee cannot assert an alter ego claim, the objective of bankruptcy – "to provide an orderly liquidation procedure under which all creditors are treated equally," H.R. Rep. No. 95-595, at 340, *reprinted in* 1978 U.S.C.C.A.N. at 6297 – would be defeated by permitting one creditor to pursue such a claim and obtain a share of assets that, under the law, are to be "amalgamated for the benefit of all creditors." *Schimmelpenninck*, 183 F.3d at 361.

Yet, the facts in this instance are not ordinary. As Plaintiff points out, the bankruptcy petitions voluntarily filed by the Mason Group and by Mid-West P.C. indicate that each has only one creditor – namely, Plaintiff in this case for the roughly $2.8 million due under the arbitration award. Here, it is simply not the case that there are other creditors that share Plaintiff's alter ego claims. Thus, while an alter ego claim may ordinarily be understood to allege a generalized injury to the debtor's estate, Plaintiff's claims in this case cannot be viewed as such.[1]

---

[1] Plaintiff correctly notes that, as the Seventh Circuit itself has acknowledged, the fact that a debtor has only one creditor raises the additional question of whether the bankruptcy petitions should be dismissed. *See In re Teknek, LLC*, 563 F.3d 639, 650 (7th Cir. 2009) (citing *In re Am. Telecom Corp.*, 304 B.R. 867, 873 (Bankr. N.D. Ill. 2004)). Indeed, such a circumstance suggests the possibility that the bankruptcy case may have been used solely as "a tool for thwarting the collection efforts of a single creditor." *Am. Telecom*, 304 B.R. at 873. This question, however, is one that is to be addressed by the bankruptcy court, and not by this Court.

9

Accordingly, they do not fall within the second category of *S.I. Acquisition* and are not subject to the automatic stay.[2]

In sum, the instant case is not subject to the automatic stay of Section 362(a)(3). Under Illinois law, a debtor-corporation may not pierce its own veil, and as a result, Plaintiff's claims in this case cannot be viewed as belonging to the debtors. Moreover, because Plaintiff is the only creditor of each of the debtors, its claim cannot be understood as one that alleges a generalized injury to the debtors' estates. Ultimately, it is worth noting that the absence of a stay will not frustrate the aims of the Bankruptcy Code. Given that the debtors have only Plaintiff as their creditor, an automatic stay is not needed to prevent "a multijurisdictional rush to judgment" on the part of numerous creditors. *MortgageAmerica Corp.*, 714 F.2d at 1274.

**B. Discretionary Stay**

Defendants' alternative suggestion, which they make only in passing, is that this Court should grant a discretionary stay. As this Court is not sitting in bankruptcy, Defendants are, in effect, urging this Court to exercise its inherent power to stay proceedings pending before it. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ."). The Supreme Court has delineated two basic requirements for the grant of a discretionary stay. First, a party that seeks such a stay "must make a clear case of hardship or inequity in being required to go forward." *Id.* Second, such a stay must have a reasonable time limit. *Id.* at 257.

The Fifth Circuit has held that the bankruptcy of a related entity does not in and of itself

---

[2] To the extent that the debtors' filings with the bankruptcy court and Defendants' filings with this Court have erroneously omitted other creditors, this question may be revisited.

justify a discretionary stay and that a party seeking such a stay must still satisfy the two

aforementioned requirements. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544-46 (5th

Cir. 1983) (vacating discretionary stays as improvidently granted because no sufficient showing

of hardship had been made); *see also GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d

711, 716-17 (5th Cir. 1985) (affirming the denial of a request for a discretionary stay in part

because "there [was] no indication of [the] likely duration [of the bankruptcy proceeding] or of

any reasonable date of termination"). In this case, Defendants have neither specified hardships[3]

nor identified a time limit for the stay they wish to obtain. Accordingly, Defendants have not

demonstrated that a discretionary stay is warranted.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Stay (Rec. Doc.

No. 66) is hereby **DENIED**.

New Orleans, Louisiana, this 25th day of May, 2011.

_____

UNITED STATES DISTRICT JUDGE

---

[3] To the extent that hardships to the debtor-corporations, which are not before this Court, are relevant, Defendants' citation to *SAS Overseas Consultants v. Benoit*, 2000 WL 140611 (E.D. La. 2000), is of no help since the court in that case was concerned about a reorganization proceeding under Chapter 11 of the Bankruptcy Code, *id.* at *3. As noted above, the debtor-corporations here have filed for bankruptcy under Chapter 7 of the Bankruptcy Code. "The only policy implicated [in this context] is the fair and orderly liquidation of corporate assets to creditors." *Am. Telecom*, 304 B.R. at 870. As noted above, this Court is unable to find that allowing this case to move forward will prevent an orderly liquidation proceeding from taking place, given that the two debtor-corporations each have only Plaintiff as their sole creditor.